[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION DE: DEFENDANT'S MOTION TO OPEN,REARGUE AND RECONSIDER (#133)
The plaintiff wife and the defendant husband intermarried on March 13, 1987. The plaintiff afterward brought this action returnable to the first Tuesday of August, 1994 seeking a dissolution of marriage, a division of the assets of the parties, assignment of the (sic) defendant estate to the plaintiff, alimony and counsel fees. The defendant filed a cross complaint seeking:
"In the event a decree of dissolution is entered by the Court:
1. An assignment of the estate of the plaintiff, pursuant to the provisions of Connecticut General Statutes Sec. 46b-81.
2. An interest in the real property located at 120 Milbank Avenue, Greenwich, Connecticut
3. An equitable division of real and personal property.
4. Such further or different relief as to the Court may seem equitable."
The defendant also served a notice of lis pendens relating to a parcel of land located at 120 Milbank Avenue, Greenwich, and recorded it in the land records.
On July 2, 1995 the plaintiff died intestate. Prior to her death, she had executed a quit claim deed of her interest in 120 CT Page 13671 Milbank Avenue, Greenwich to a third party. The deed was not recorded until July 5, 1995.
The defendant claims this transfer was fraudulent and also is voidable as being executed by the plaintiff while under undue influence. Upon learning of the deed, the defendant filed two motions:
1. Motion to cite in party defendant and
2. Motion for Administrator to be substituted as party. The motions printed on the calendar of August 3, 1995 and, without a hearing, the court denied the motion to substitute and ruled
 "Death of Spouse is the end of the cause of action for dissolution."
The court also denied the motion to cite in the grantee of the deed.
The court subsequently conducted a hearing on the present motion, heard counsel and received memoranda of law from both sides.
The defendant contends that the court retains jurisdiction of this dissolution action, despite the death of the plaintiff, pursuant to General Statutes § 52-599. The defendant also argues that the lis pendens he filed on the property gives the court in rem jurisdiction. The plaintiff's attorney maintains that an action for dissolution of marriage is defeated or rendered useless by the death of a party, and, therefore, § 52-599 is inapplicable.
General Statutes § 52-599 provides in pertinent part that "[a] cause of action shall not be lost or destroyed by the death of any person, but shall survive in favor of or against the executor or administrator of the deceased person. . . . The provisions of this section shall not apply: (1) To any cause or right of action or to any civil action or proceeding the purpose or object of which is defeated or rendered useless by the death of any party thereto . . . ." General Statutes § 46b-40 (a) provides that "[a] marriage is dissolved only by (1) the death of one of the parties or (2) a decree of annulment or dissolution of marriage by a court of competent jurisdiction." (Emphasis added.)
Despite the provisions of § 46b-40 (a)(1), the defendant CT Page 13672 contends that the court in Perlstein v. Perlstein, 26 Conn. Sup. 257
(Super.Ct. 1966), determined that § 52-599 applies to actions for dissolution of marriage. In Perlstein, however, the cause of action was annulment, not dissolution. An annulment and a dissolution are fundamentally different in that "[a]n annulment renders the marriage void ab initio while a dissolution is based upon a valid marriage which terminates as of the date of the judgment of dissolution." Durham v. Miceli, 15 Conn. App. 96,543 A.2d 286 (1988). The court in Perlstein determined that an annulment was encompassed within § 52-599 because "[i]n equity, even in the absence of a statute, a pending suit does not abate if the cause of action survives. . . . An action to annul a bigamous marriage may be brought either in the lifetime of the parties or after the death of the supposed husband or wife." Perlstein v.Perlstein, supra, 26 Conn. Sup. 260.
The court in Perlstein did not hold that § 52-599 is applicable to an action for dissolution of marriage, but rather, determined that an action for annulment is one that survives the death of a party, and therefore, an action for annulment falls within § 52-599.
At common law "a personal action . . . does not survive the death of the claimant, a doctrine expressed in the maxim, actio personalis moritur cum persona." (Internal quotation marks omitted.) Ladd v. Douglas Trucking Co., 203 Conn. 187, 193,523 A.2d 1301 (1987). In respect to dissolution actions, as a general rule "[a] cause of action for a divorce is purely personal, and it has been held that such a cause of action terminates on the death of either spouse; and if an action for divorce is commenced, and one of the parties dies thereafter, but before the entry of a final decree, the action abates." 24 Am.Jur.2d § 176 (1983). Furthermore, "[p]ersonal representatives . . . may not be substituted in the action where the suit for divorce is abated." 27A C.J.S. § 128 (1986). While Connecticut has yet to determine this issue, the rule appears to be fundamental. In New York, the court in Estate of Aglita v. Aglita, 155 Misc.2d 385, 589 N.Y.S.2d 236,240 (N.Y.Sup.Ct. 1992), noted that "[t]he rule is, of course, that a suit for divorce abates at the death of either party, because the marriage relation sought to be dissolved no longer exists. . . ." (Emphasis deleted; internal quotation marks omitted.) In North Carolina, "[i]t is the general rule that an action for divorce proper, being a truly personal action based upon the personal relationship and status of marriage, terminates with the death of either spouse, not only because of its personal character, but because the marriage is ipso facto dissolved by CT Page 13673 death." Elmore v. Elmore, 67 N.C. App. 661, 313 S.E.2d 904, 907
(1984). The court in Elmore also cited earlier authority in which the court stated that "[n]o decree for a divorce having been pronounced, none can now be entered. The prayer of this bill has been answered by the inevitable decree of a tribunal higher than any earthly forum. The marriage relation is dissolved forever, and all litigation between the parties must cease." Id., citing, Swanv. Harrison, 42 Tenn. (2 Cold.) 534, 539-40 (1865). The Elmore
court also noted that the United States Supreme Court has recognized the principle that "[n]o power can dissolve a marriage which has already been dissolved by an act of God." Id., citing,Bell v. Bell, 181 U.S. 175, 178, 21 S.Ct. 551, 45 L.Ed. 804
(1901). Moreover, it would seem that this concept is basic to the institution of marriage in that the vows most commonly associated with marriage are as follows: "To have and to hold from this day forward, for better for worse, for richer for poorer, in sickness and in health, to love and to cherish, til death do us part."
(emphasis added.) The Book of Common Prayer, p. 301 (1928).
The defendant asserts that the court should retain jurisdiction in order to determine the issues relating to distribution of property which were raised in the original complaint. While, under certain circumstances, some courts have retained jurisdiction to determine property questions, that has occurred when a judgment of dissolution has already been rendered, yet property questions remain to be determined. 24 Am.Jur.2d § 177 (1984); H. Clark, The Law of Domestic Relations in the United States § 15.2 (2d Ed.). In Pennsylvania, the court in Pinkerton v.Pinkerton, 435 Pa. Super. 455, 646 A.2d 1184, 1185 (1994) stated that "[b]ecause a divorce action is abated by the death of one of the parties prior to the entry of a decree, economic claims are also abated by the death of one of the parties prior to the entry of a decree. . . . However, once a final divorce decree has been entered, the right of a subsequently deceased spouse to the distribution of marital property and other economic claims, where these matters have been properly put before the court is vested." Similarly, in MacLeod v. Hoff, 654 So.2d 1250, 1251 (Fla. 1995) the court stated that "[i]t has been found . . . that where a final judgment of dissolution has been entered before the death of a given spouse, a trial court retains jurisdiction to determine property rights after that spouses's death, if it reserved jurisdiction to do so pursuant to the final judgment of dissolution." A federal court, applying California law, held that because a divorce action abates upon the death of a party a court may not determine the status of property between the parties as the CT Page 13674 property issues are incidental to the primary objective, the dissolution of the marriage. Metropolitan Finance Corp. v. Wood,175 F.2d 209, 210 (9th Cir. 1949). The court in Johnson v.Johnson, 653 N.E.2d 512, 516 (Ind.App. 1995) determined that "[t]he property settlement is part and parcel of a final decree of dissolution. Once the marriage is ended by the death of one of the parties before the judgment is rendered, no final decree can be attained. . . . Without a final decree, there can be no property settlement." In Sprouse v. Griffin, 458 S.E.2d 770 (Va. 1995), however, the court did retain in rem jurisdiction over an escrow fund which had been created by order of the court before the death of one of the parties. The court recognized that a divorce suit abates upon death before a decree on the merits, however, the court determined that because the fund had been established "until further order of the court" it was not vacated upon the abatement of the litigation, and the court retained jurisdiction over the res. Id., 773.
In the present action, there has been no judgment of dissolution, nor has the court made any order in relation to any marital property. Therefore, upon the death of the plaintiff the action abated because, in accordance with General Statutes §46b-40 (a)(1), a marriage is dissolved by the death of one of the parties.
Regarding the property, the defendant claims the court retains in rem jurisdiction because the defendant filed a lis pendens.
"A notice of lis pendens is appropriate where the pending action will in some way, either directly or indirectly, affect the title to or an interest in the real property itself." FirstConstitution Bank v. Harbor Village Ltd., 37 Conn. App. 698, 703,651 A.2d 1110 (1995). However, a lis pendens is merely notice that there is pending litigation that may affect title to the property, but it does not confer in rem jurisdiction upon the court.
Nevertheless, the abatement of the dissolution action does not leave the defendant without recourse regarding the transfer of the marital property. The defendant is free to pursue a civil fraudulent conveyance action. "A party complaining of a fraudulent conveyance has, among other remedies, one at law for damages against both wrongdoers, and one at in equity to have the fraudulent conveyance set aside." Gaudio v. Gaudio, 23 Conn. App. 287,302, 580 A.2d 1212, cert. denied, 217 Conn. 803 (1990); see also General Statutes § 52-552 through 52-5521. Accordingly, the CT Page 13675 defendant's motion to open is denied and the action remains dismissed.
HARRIGAN, JUDGE